UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WASEM PETRUS,

    Petitioner,

v.

CASE NO: 07-20361-1
HONORABLE VICTORIA A. ROBERTS

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

**I.    INTRODUCTION**

This matter is before the Court on: (1) Petitioner Wasem Petrus' Motion to Appoint Corbett O'Meara as CJA Lawyer and (2) Petitioner's Motion to Vacate, Set Aside, or Correct his sentence, pursuant to 28 U.S.C. § 2255.  Petitioner says his Fifth Amendment due process right and Sixth Amendment right to effective assistance of counsel were violated at sentencing, entitling him to relief.

Petitioner's motion to appoint Mr. O'Meara as counsel is **GRANTED**; the Court appoints Mr. O'Meara to represent Petitioner *nunc pro tunc* from November 1, 2010. The Court finds Petitioner's constitutional rights were violated; Petitioner's motion to vacate is **GRANTED**.

**II.    BACKGROUND AND PROCEDURAL HISTORY**

In November 2007, Petitioner pled guilty to conspiring with co-Defendant, Sanan Atou, to possess with intent to distribute MDMA in violation of 21 U.S.C. §§ 841(a)(1)

1

and 846.  Petitioner's sentencing guideline range was 70 to 87 months.  In May 2008, the Court sentenced Petitioner to 70 months in prison.  Atou's guideline range was 46 to 57 months; the Court sentenced him to one day in custody, with credit for time served.

Petitioner's attorney, Corbett O'Meara, asked Atou's attorney, Sanford Schulman, why he thought there was such a disparity between the sentences.  Mr. Schulman responded that the court held off-the-record, *ex parte* discussions with him and the Government.  A discussion was held in response to a sealed sentencing memorandum and letter Atou filed; it involved counsel for the Government, counsel for Atou, Atou and the Court.  Atou told the Court he was apprehensive to cooperate with the Government because Petitioner threatened him and his family.  In the letter, he said Petitioner threatened to find and torture them if Atou told the police that Petitioner was involved in the conspiracy.  Atou said he felt their lives were in jeopardy.  Atou also filed a sealed supplemental sentencing memorandum, restating these allegations.

Petitioner hired a new attorney to represent him on appeal.  Mr. O'Meara told appellate counsel about the communication between the Court, Mr. Schulman and the Government; however, Petitioner's appellate counsel did not raise the issue on appeal.  Although the Court did not state it relied on the information provided by Atou when sentencing Petitioner, Petitioner contends the only explanation for the disparate sentences is that the Court considered the information.

Petitioner's conviction and sentence were affirmed by the Sixth Circuit Court of Appeals. *United States v. Petrus*, 588 F.3d 347, 357 (6th Cir. 2009).  Petitioner filed his habeas petition on November 2, 2010.  On November 15, 2010, the Court struck Petitioner's motion because it did not conform to the Court's rules.  Petitioner filed a

2

renewed motion on May 3, 2011.  On May 20, 2011, at Petitioner's request, the Court unsealed two sentencing memoranda filed by Atou.  In the memoranda, Atou describes intimidation and threats by Petitioner.  Petitioner says Atou recently admitted he lied to the Court when he alleged Petitioner threatened him.

## III.    ARGUMENTS

Petitioner moves the Court to appoint Mr. O'Meara as his counsel because he is incarcerated and indigent.  Mr. O'Meara prepared, researched and drafted the briefings received by the Court thus far and has not been compensated for his efforts.  The Government did not respond to the Motion.

In his Motion to Vacate Sentence, Petitioner says he should have been given an opportunity to respond to Atou's accusations before he was sentenced; he says the Court's failure to inform him of them, and allow him to respond, violated his Fifth Amendment right to a fair and open sentencing hearing.  In addition, Petitioner states counsel at sentencing and on appeal were constitutionally ineffective for failing to raise this due process issue.  (Doc. # 45).

The Government argues in response: Petitioner's § 2255 claim is time-barred by § 2255(f)'s one-year statute of limitations; Petitioner's due process claim is procedurally defaulted because he failed to raise it on direct appeal and appellate counsel's alleged ineffectiveness does not excuse the default; and, Petitioner failed to raise a cognizable constitutional claim because there is no right to confront witnesses at sentencing. (Doc. # 51).

Petitioner replies that the one-year statute of limitations should be equitably tolled because the Court did not unseal Atou's sentencing memoranda, accusing Petitioner of

threats, until May 20, 2011. He says the now-unsealed memoranda constitute "newly discovered evidence" that could not have been known to him prior to that date, and are grounds to toll the limitations period. He says he did not procedurally default his claim because appellate counsel was constitutionally ineffective, constituting cause and prejudice to excuse the failure to raise the issue on direct appeal. Finally, he argues that the Court's Fed. R. Crim. P. 32 violation creates a cognizable due process claim despite the fact that there is no confrontation right at sentencing. (Doc. # 52).

## IV. ANALYSIS

### A. Petitioner's Motion to Appoint Corbett O'Meara as CJA Lawyer

Although Petitioner does not have the absolute right to counsel on habeas review, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), representation may be provided for any financially eligible person seeking relief under 28 U.S.C. § 2255 if the Court determines that the "interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); *see also* 18 U.S.C. § 2255(g); *U.S. ex rel. Marshall v. Wilkins*, 338 F.2d 404, 406 (2d Cir. 1964) ("Because habeas corpus is nominally civil in nature, the Sixth Amendment does not apply. But this and other courts have held that sound discretion, perhaps deriving from the Fifth Amendment, requires that counsel be appointed for petitioners, at least in some cases."). Whether to appoint counsel to an indigent habeas petitioner is within the discretion of the district court. *Hood v. Galaza*, 47 F.Supp.2d 1144, 1149 (S.D. Cal. 1999) (citing *Finley*, 481 U.S. at 555-57).

The Sixth Circuit has said appointment of counsel for an indigent civil litigant "is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993). "In determining whether 'exceptional circumstances' exist,

courts have examined 'the type of case and the abilities of the plaintiff to represent himself....This generally involves a determination of the complexity of the factual and legal issues involved.'" *Id.* (citations omitted).

In addition, courts often consider whether the proposed grounds for habeas relief have merit. *See, e.g.*, *Taylor v. Knight*, 223 Fed.Appx. 503, 504 (7th Cir. 2007); *Keohane*, 992 F.2d at 606; *United States v. Masters*, 484 F.2d 1251, 1253 (10th Cir. 1973); *Thirkield v. Pitcher*, 199 F.Supp.2d 637, 653 (E.D. Mich. 2002). Courts have held a habeas petitioner is entitled to appointed counsel when "the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986); *see also U.S. ex rel. Worlow v. Pate*, 411 F.2d 972, 974 (7th Cir. 1969) (the appointment of counsel for indigent petitioners in § 2255 proceedings rests in the sound discretion of the district court unless denial would result in fundamental unfairness impinging upon due process rights).

Petitioner raises meritorious and complex Fifth Amendment due process and Sixth Amendment adequacy of representation issues. In addition, there are complicated procedural questions regarding statute of limitations and procedural default. Under these circumstances, it is appropriate to appoint counsel; the Court **GRANTS** Petitioner's motion to appoint Mr. O'Meara *nunc pro tunc* from November 1, 2010 is **GRANTED**.

    B.    **Petitioner's Motion to Vacate**

        1.    **Standard of Review**

Because Petitioner's habeas petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 governs this cause. Under § 2255, a prisoner in custody under sentence of a federal court may move the court to vacate, correct, or set aside the sentence on grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The petitioner bears the burden to show he is entitled to relief. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

To prevail on a § 2255 motion that alleges constitutional error, the petitioner must establish an error "of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When the motion alleges non-constitutional error, "the petitioner must establish a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (citations and internal quotation marks omitted). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

"Normally, sentencing challenges must be made on direct appeal or they are waived." *Weinberger*, 268 F.3d at 351; *see also Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal, and thus a

defendant cannot use it to circumvent the direct appeal process."). The general rule is claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982). However, because a defendant claiming ineffective assistance of counsel will often need to develop the district court record, and the district court is better suited than the appellate court to assess the facts related to the adequacy of defense counsel, an ineffective assistance of counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 503-06 (2003).

### 2.	Statute of Limitations

Section 2255 creates a one-year statute of limitations to file a motion to vacate a sentence. The period begins to run from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims could have been discovered through the exercise of reasonable diligence.

28 U.S.C. § 2255(f).

Petitioner says the facts underlying the *ex parte* meeting could not have been discovered prior to the Court's May 20, 2011 Order unsealing Atou's sentencing memoranda. The Court agrees. Mr. O'Meara's affidavit, filed with his renewed motion, states that he was informed of the meeting on May 20, 2008; however, Mr. O'Meara

says Mr. Schulman simply told him Atou informed the Court he "felt threatened or intimidated by co-Defendant Wasem Petrus, and that this is why Atou had not cooperated." (Doc. # 45, Exh. 1).

In contrast, the sealed sentencing memoranda contain specific allegations that neither Mr. O'Meara nor Petitioner was aware of until the documents were unsealed. In particular, the letter included with Atou's first memorandum alleged that Petitioner told Atou he arranged for a customer at his store to torture Atou and his family if Atou cooperated with the Government and police. (Doc. # 49). Atou claimed that Petitioner "repeatedly stated that if [he] wasn't telling [Petitioner] the truth [about not cooperating] he swore on everything he would get someone to come after [Atou] and [Atou's] family and he wouldn't rest until he thought [Atou] got his pay back." (*Id.*). Atou stated he felt he and his family were in grave danger and he refused to cooperate with the Government to protect them. (*Id.*). Under § 2255(f)(4), the facts underlying the claim could not have been discovered prior to May 20, 2011; therefore, the statute of limitations did not begin to run until that date. Petitioner's claim is not time-barred.

        **3.**        **Procedural Default**

The Government contends Petitioner procedurally defaulted his claim that the *ex parte* meeting violated his right to due process, by failing to make that argument on appeal.

To obtain collateral relief based on trial court error at sentencing, under § 2255, where no contemporaneous objection was made and the issue was not raised on direct appeal, Petitioner must show: (1) "cause" to excuse his double procedural default, and (2) "actual prejudice" resulting from the errors. *United States v. Frady*, 456 U.S. 152,

167-68 (1982).

Petitioner says the ineffectiveness of his trial and appellate counsel excuse the default. An ineffective assistance claim can serve as both cause and prejudice, excusing procedural default of an underlying substantive claim. *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008). And because Petitioner could not have raised the ineffectiveness of appellate counsel on direct appeal, that claim is not itself defaulted. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). So, the question is, was appellate counsel ineffective for failing to argue on direct appeal that the Court's *ex parte* meeting violated Petitioner's due process rights? If so, Petitioner can show cause and prejudice to excuse his procedural default of the underlying due process claim and the Court can reach the merits of that claim. *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010).

To establish that appellate counsel was constitutionally ineffective, Petitioner must show counsel performed deficiently and he was prejudiced by counsel's deficient performance*. Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984)). A petitioner can bring a *Strickland* claim based on counsel's failure to raise a particular issue on appeal, but it is difficult to demonstrate counsel was ineffective. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). In *Jones v. Barnes*, 463 U.S. 475 (1983), the Supreme Court held that "appellate counsel who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins*, 528 U.S. at 288. "Thus, to determine whether [P]etitioner received ineffective assistance of appellate counsel, this Court must first examine the merits of the claims which appellate counsel might have

9

presented in [P]etitioner's direct appeal, but failed to do so." *Pitcher*, 199 F.Supp.2d at 651.

To demonstrate deficient performance, Petitioner must show that appellate counsel made an objectively unreasonable decision to raise issues other than his due process claim, meaning that claim was "clearly stronger" than the issues presented. *Thompson*, 598 F.3d at 285. To demonstrate prejudice, Petitioner must show "'a reasonable probability that, but for his counsel's unreasonable failure to' raise a [due process] claim on appeal, 'he would have prevailed.'" *Id.* (quoting *Robbins*, 528 U.S. at 285). "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Howard v. Bouchard*, 405 F.3d 459, 481 (6th Cir. 2005) (citation and internal quotation marks omitted).

Appellate counsel chose not to raise the due process issue or argue that the Court must have taken Atou's remarks into account when sentencing Petitioner because of the disparity between their sentences. Instead, he argued,

> Although presented with a number of compelling arguments for leniency, the trial judge, without explanation, imposed a sentence within the advisory Guidelines range. This lack of explanation - as well as comments suggesting that she gave the Guidelines impermissibly preeminent weight as among the sentencing factors set forth in 18 U.S.C. § 3553(a), and misapprehended or misapplied at least one of those factors - renders her sentencing decision procedurally 'unreasonable,' and requires that the defendant's sentence be vacated.

(Doc. # 51, Exh. 1 ("Appellant's Brief on Appeal") at 18).

It was objectively unreasonable to raise these issues but fail to state a due process claim, which the Court believes was the "clearly stronger" claim. The Sixth Circuit held that appellate counsel's argument was foreclosed by Sixth Circuit precedent.

*Petrus*, 588 F.3d at 355 (citing *United States v. Lapsins*, 570 F.3d 758 (6th Cir. 2009)). The court observed,

> Here, as in *Lapsins*, the district court might have said more during the sentencing hearing. The best practice...is for the district court to explicitly address all of the nonfrivolous arguments that a defendant raises in support of a lower sentence....In this case, however, the district court's brevity does not constitute reversible error. The court explained its decision by discussing the considerations the court considered most important.

*Id.* (citation and internal quotation marks omitted). The court emphasized that this Court gave both parties the opportunity to argue for the sentence they deemed appropriate and made an individualized assessment of the facts after a thorough consideration of all the § 3553(a) factors. *Id.* at 354.

On the other hand, the due process issue was a significant one. "Federal Rule of Criminal Procedure 32, which governs sentencing procedures in the federal courts, emanates from Congress' concern for protecting a defendant's due process rights in the sentencing process." *United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001). Under Fed. R. Crim. P. 32(d)(3), the presentence report must exclude information that, if disclosed, might result in physical or other harm to the defendant or others. Fed. R. Crim. P. 32(i)(1)(B) provides that, at sentencing, "the court must give the defendant and an attorney for the government a written summary of – or summarize in camera – any information excluded from the presentence report under rule 32(d)(3) on which the court will rely in sentencing, and give them a reasonable opportunity to comment on that information." Fed. R. Crim. P. 32(i)(1)(C) requires the Court to allow the parties' attorneys to comment on any "matters relating to an appropriate sentence." The Court did not tell Petitioner about Atou's allegations and did not provide defense counsel an

opportunity to comment on them.

The Court cannot now say it did not rely on Atou's statement that Petitioner threatened him when it sentenced Petitioner to 70 months in prison.  And the Court agrees with Petitioner that it is probable that the Court considered this information given the disparity between Atou's and Petitioner's sentences based on their guideline ranges and levels of culpability.  Thus, the Court violated Rule 32 by failing to notify Petitioner of Atou's allegations and to give him a chance to respond.  *See, e.g.*, *Nappi*, 243 F.3d at 764 *(*"[W]here, as here, counsel are faced with having to review and address the contents of an additional document on which the Court intends to rely at sentencing, a meaningful opportunity to comment requires the Court, in accordance with Rule [32(i)(1)(C)], to provide a copy of the document to counsel for the defendant and the government within a sufficient time prior to the sentencing hearing to afford them with a meaningful opportunity to comment on it at sentencing and, depending on the document, prepare a response or contest it."); *United States v. Burger*, 964 F.2d 1065, 1072 (10th Cir. 1992) (vacating sentence where the sentencing court received *ex parte* communications about defendant, stating, "[w]e agree with [defendant] that the utilization of the letters without disclosure to him was violative of Fed. R. Crim. P. 32.").  Appellate counsel's failure to raise this issue was unreasonable; it was clearly stronger than the issues raised.

The Government says, "[w]hile it is clear that the procedures set forth in Rule 32 are intended to safeguard the defendant's due process rights at sentencing, failure to comply with the disclosure requirements of the rule does not amount to an error of Constitutional dimension unless the error affects defendant's substantial rights." (Doc. #

51 at 12-13). The Government says the error did not affect Petitioner's substantial rights. The Court disagrees.

The Fifth Amendment requires that no person be deprived of liberty without due process of the law. *See* U.S. Const. Amend. V. "Federal Rule of Criminal Procedure 32 protects the right of due process by requiring disclosure of most information relied upon at sentencing." *United States v. Hayes*, 171 F.3d 389, 392 (6th Cir. 1999). While error implicating Rule 32 does not always rise to constitutional dimension, *see Nappi*, 243 F.3d at 770, in this case it did. It is likely, based on the disparate sentences imposed on Petitioner and Atou, that the Court relied, to some extent, on Atou's allegations that Petitioner threatened him. Petitioner now claims that Atou's allegations were false, and if given the chance, he would have established this; he says he recently contacted Atou, who admitted he lied to the Court. The Government seems to agree. (Doc. # 51 at 10). If a defendant is sentenced based on inaccurate information, his due process rights are violated. *Nappi*, 243 F.3d at 770. Appellate counsel's performance was constitutionally deficient.

Likewise, appellate counsel's performance prejudiced Petitioner. Petitioner has shown that if appellate counsel provided evidence to the Sixth Circuit that Atou lied to the Court and the Court, without notifying Petitioner and giving him an opportunity to comment, relied on the misinformation at sentencing, there is a reasonable probability that Petitioner would have prevailed on appeal. In *Hayes,* the Sixth Circuit held that the district court erred by relying on letters from the victims of a bank robbery when sentencing the defendant because neither the defendant nor his attorney knew the letters existed, and they did not have an opportunity to respond to them. 171 F.3d at

13

394. The *Hayes* court vacated the defendant's sentence on plain error review; it held the error was prejudicial, *i.e.*, it affected the defendant's substantial rights, because it affected the outcome of the district court proceeding. *Id.* at 395.

The *Hayes* court distinguished that case from another Sixth Circuit case, where the court held the sentencing court's reliance on extra-record information was harmless. The *Hayes* Court observed:

> In *Patrick*, we concluded that the sentencing court's reliance on extra-record information was harmless because that information was, for the most part, cumulative of other evidence properly before the court. The only non-cumulative evidence was the district court's 'essentially irrebuttable' impression of how Patrick's demeanor differed from another defendant's. Because of these circumstances, advance notice would not have given Patrick 'any additional incentive or ability to challenge the accuracy of the evidence.' [*United States v. Patrick*, 998 F.2d 641, 648 (6th Cir. 1992)]. In contrast, the letters in this case contain factual assertions and therefore are not the type of evidence that is 'essentially irrebuttable.'
>
> ***
>
> For the same reason, we cannot accept on faith the government's assertion that the letters are similar to evidence presented at trial. The district court did not read the letters into the record or even have them in the courtroom during the sentencing hearing. The sentence pronouncement was based on what the court remembered about the letters, but counsel was not in a position to correct any mistakes in the court's recollection. *Cf. Townsend* [*v. Burke*, 334 U.S. 736, 741 (1948)] (reversing sentence because defendant lacked counsel who "could have taken steps to see that the conviction and sentence were not predicated on misinformation" about the defendant's criminal record). Given the district court's own emphasis on the letters, we will not assume that they contained nothing new. One other factor was important in *Patrick* and deserves mention here. We noted in *Patrick* that the defendant knew in advance that the issue of his role in the offense was before the court as a possible grounds for enhancing his sentence. "Under such circumstances, Patrick already had an adequate incentive to present any evidence or arguments he could that would contradict the inference that he was a leader." *Patrick*, 988 F.2d at 648. In contrast, Hayes had no notice that "victim impact" would be a factor at his sentencing hearing-the presentence report listed only the bank as the victim and mentioned that all the money had been recovered.

14

*Hayes*, 171 F.3d at 394-95. The *Hayes* court concluded, "[t]he use of undisclosed evidence against a criminal defendant, without the safeguards of Rule 32[(i)(1)(A),(B)], is the type of error that may undermine the fairness of a proceeding and that certainly tarnishes the public reputation of judicial proceedings....We therefore exercise our discretion to grant relief." *Id.* at 395.

The circumstances of this case are more similar to *Hayes* than *Patrick*. In *Patrick*, the defendant was on notice of other evidence that supported the court's decision to apply a leadership enhancement. Here, Petitioner was not on notice that evidence of his alleged intimidation and threats was before the Court; he did not know in advance that the alleged threats provided a possible ground for the Court's sentence; it was not cumulative of other evidence properly before the Court.

As in *Hayes*, "the letter[ ] in this case contain[s] factual assertions and therefore [is] not the type of evidence that is 'essentially irrebuttable.'" *Id.* at 394. In fact, Petitioner now presents evidence to rebut Atou's accusations. That distinguishes this case from those where the Sixth Circuit concluded the district court's Rule 32 violation did not prejudice the defendant. *See United States v. Meeker*, 411 F.3d 736, 742 (6th Cir. 2005) ("There seems to be little that Meeker could have done to effectively rebut the heart-wrenching descriptions of the victims' emotional distress that were recounted in many of the letters. Because this evidence was 'essentially irrebuttable,'...even if it had been disclosed to him in advance of his sentencing hearing, Meeker can show no prejudice warranting correction under Rule 52(b)."); *cf. United States v. DeBardeleben*, 740 F.2d 440, 447 (6th Cir. 1984) (finding no prejudice where defendant did not "suggest what rebuttal he could make other than his blanket denial").

The Government points out that "the Court made no mention on the record that it was relying on Atou's version of events to sentence Defendant." (Doc. # 51 at 13). While the Court did not specifically say it was relying on Atou's letter to sentence Petitioner, given the disparity between their sentences, the Court cannot now say it did not rely on the letter or statements in the sealed sentencing memoranda.

In *Patrick*, the Sixth Circuit held the sentencing court erred by considering, without notice, testimony of one defendant, implicating the other as the leader of a criminal conspiracy, where the sentencing court simply "referred in passing" to the evidence. 988 F.2d at 644, 647. Similarly, here, although the Court did not explicitly reference Atou's allegations, in passing or otherwise, a reasonable inference is the Court considered them. *See id.* at 647 ("The sentencing judge clearly had Carmack's testimony in mind when he decided to overrule Patrick's objection to the presentence report. The sentencing court's ruling was based in part on the brief argument of the attorney for the government, which had its evidentiary basis exclusively in Carmack's testimony. Furthermore, the sentencing court appears to have been referring not only to Carmack's testimony but also to his demeanor as compared to that of Patrick.").

The alleged threats, which involved torture of, and revenge against, innocent persons, were very serious. The Court applied a substantial downward variance to Atou's sentence, despite his failure to cooperate with and assist the Government, and did not vary at all from the guidelines for Petitioner. These facts are sufficient to undermine confidence in the outcome of the proceedings, and the proper remedy is to vacate the sentence. *Cf. United States v. Berzon*, 941 F.2d 8, 20 (1st Cir. 1991) (remanding to the sentencing judge to state on the record whether he relied on

information ascertained at a co-defendant's sentencing hearing to sentence the defendant and stating, if he did, he should vacate the defendant's sentence and the defendant should be sentenced again, by a different district judge).

There is a reasonable probability that but for appellate counsel's failure to raise a due process claim, Petitioner would have prevailed on appeal. Petitioner establishes that appellate counsel was ineffective, and shows cause and prejudice to excuse his procedural default of the underlying due process claim.

### 4. Fifth Amendment Claim

The Court concludes Petitioner's due process rights were violated; in all likelihood, it relied on information to sentence Petitioner which the Government concedes, is false. A sentence based on information that is materially untrue "is inconsistent with due process of law." *Townsend*, 334 U.S. at 741; *see also Hayes*, 171 F.3d at 395 (the use of undisclosed evidence against a defendant at sentencing may, in some cases, undermine the fairness of the proceeding and warrant habeas relief). Even if there was a dispute about the veracity of Atou's allegations, Petitioner presents enough evidence to establish that if he was given an opportunity to rebut the allegations at sentencing, "he would have done something by way of argument or proof...that probably would have impacted upon the Court's sentence." *Nappi*, 243 F.3d at 770.

## V. CONCLUSION

Petitioner's Motion to Appoint Counsel is **GRANTED**. Petitioner's Motion to Vacate Sentence is **GRANTED**; his sentence is **VACATED**. The Court **RECUSES** itself from further consideration of Petitioner's case.

**IT IS ORDERED.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: June 30, 2011

---

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on June 30, 2011.

s/Linda Vertriest
Deputy Clerk

---